IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELODY LYNN VOKES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 12-1662 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| ACTING COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM AND ORDER OF COURT

AND NOW, this _4th_ day of _February, 2014_, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 11) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 9) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed her pending applications for benefits on July 9, 2009, alleging a disability onset date of July 4, 2009, due to the loss of several fingers on her right hand in a fireworks accident. Plaintiff's applications were denied initially. At plaintiff's request an ALJ held a hearing on March 8, 2011, at which plaintiff, represented by counsel, appeared and testified. On March 29, 2011, the ALJ issued a decision finding that plaintiff is not disabled. On September 25, 2012, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 47 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §§404.1563(c) and 416.963(c). She has a high school education and has past relevant work experience as an assistant manager/manager at a retail store and as a donut maker, waitress, cashier, assistant manager and manager at a donut shop, but she has not engaged in any substantial gainful activity since her alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of a right hand injury, right side hearing loss, mood disorder and panic disorder, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to engage in work at the light exertional level but with numerous restrictions necessary to accommodate her physical and mental impairments. (R. 13).[1] Taking into account these restrictions, a vocational

---

[1] Specifically, the ALJ found that plaintiff has the residual functional capacity to perform light work "except there can be no work requiring fine manipulation, handling, fingering and grasping with her right dominant upper extremity; she can us her dominant right upper extremity as a guide only; there can be no work in environments with loud background noise; she is limited to simple, routine, repetitive tasks,

expert identified numerous categories of jobs which plaintiff can perform based upon her age, education, work experience and residual functional capacity, including telephone quote clerk, companion and night patrolman. Relying on the vocational expert's testimony, the ALJ found that, although plaintiff cannot perform her past relevant work, she is capable of making an adjustment to numerous jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded that plaintiff is not disabled under the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(2)(A) and §1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[2] 20 C.F.R.

---

not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes; she is limited to occupations not involving high levels of stress, i.e., requiring independent decision making or occupations subject to close supervision or close interaction with co-workers or the general public.

[2] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432; 20 C.F.R. §§404.1520a and 416.920a.

§§404.1520 and 416.920. If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff raises two challenges to the ALJ's determination that plaintiff is not disabled: (1) the ALJ improperly evaluated the medical evidence by erroneously rejecting the opinion of the consultative examiner; and, (2) the ALJ's residual functional capacity finding and hypothetical to the vocational expert failed to account for all of plaintiff's work-related limitations. Upon review, the court is satisfied that the ALJ properly evaluated the evidence and that all of the ALJ's findings are supported by substantial evidence.

Plaintiff's first argument is that the ALJ improperly evaluated the medical evidence. Specifically, plaintiff contends that the ALJ erroneously rejected the opinion from Dr. Cynthia Peterson-Handley, Ph.D., a consultative examiner who indicated in a medical source statement dated November 30, 2009, that plaintiff had "extreme" or "marked" limitations in her ability to do a number of work-related mental activities involving understanding, remembering and carrying out instructions and responding appropriately to supervisors, co-workers and work pressures in a work setting. (R. 299). The court finds no error in the ALJ's evaluation of this evidence.

Under the Social Security Regulations, an ALJ is to evaluate every medical opinion received, regardless of its source, and is required to consider numerous factors in deciding the weight to which each opinion is entitled, taking into account numerous factors including the opinion's supportability, consistency and specialization. 20 C.F.R. §§404.1527(d) and 416.927(d). Importantly, the opinion of any physician on the issue of what an individual's residual functional capacity is or on the ultimate determination of disability never is entitled to special significance. 20 C.F.R. §§404.1527(e) and 416.927(e); SSR 96-5p.

AO 72
(Rev. 8/82)

Here, the ALJ adhered to the foregoing standards in evaluating the medical evidence. The ALJ expressly addressed Dr. Handley's medical source statement in the decision and adequately explained why he rejected her conclusion that plaintiff has extreme or marked limitations in her ability to perform any work-related mental activities. (R. 17-18). The ALJ found that Dr. Handley's opinion was "not consistent with all of the medical and non-medical evidence in the claims folder" and that the report appeared to "rel[y] heavily on the subjective report of symptoms and limitations provided by [plaintiff]," (R. 18) which the ALJ also found to be not supported by the totality of the evidence.[3] In that regard the ALJ observed that plaintiff never sought mental health treatment and was never hospitalized for mental health problems and was only prescribed Paxil by her primary care physician. (Id.) Accordingly, the ALJ determined that Dr. Handley's medical source statement "overestimate[d] the severity of [plaintiff's] functional restrictions." (R. 17).

The record supports the ALJ's evaluation of the foregoing medical evidence. Dr. Handley's opinion was based on just one encounter with plaintiff and does not reflect a longitudinal understanding of her condition. Moreover, as the ALJ properly noted, Dr. Handley's report was based largely on plaintiff's own subjective complaints. Although plaintiff argues that there is "no evidence" supporting the ALJ's assertion that Dr. Handley

---

[3] Plaintiff has not challenged the ALJ's credibility determination and the court finds no error in the ALJ's evaluation of plaintiff's subjective complaints of pain and limitations. As required, in assessing plaintiff's credibility the ALJ considered plaintiff's subjective complaints, but also considered those complaints in light of the medical evidence and all of the other evidence of record. 20 C.F.R. §§404.1529(c) and 416.929(c); see also SSR 96-7p. The ALJ did a thorough job in his decision explaining why plaintiff's allegations of disabling subjective symptoms are not supported by the record, in particular by the objective medical findings or by plaintiff's self-reported activities of daily living. (R. 14-18). Based upon all of the evidence, the ALJ found plaintiff to be not entirely credible as to her allegations of completely debilitating symptoms and limitations.

AO 72
(Rev. 8/82)

"heavily relied" on plaintiff's own complaints, a simple review of Dr. Handley's written mental status report that accompanied her medical source statement confirms the ALJ's statement.

Throughout that mental status report, Dr. Handley recorded what plaintiff "said" and "stated" and "described." For example, he notes that plaintiff "*described* her mood as 'frustrated, depressed and overwhelmed,'" that she "*denied* having experienced any hallucinations," and that she "*stated* she does have panic attacks." (R. 295). In regard to memory, Dr. Handley wrote that "[plaintiff] *said*" she remembers some remote memory and her past memory is "'not good'" and that "she *said* her short term memory is terrible." (R. 296). Likewise, in section VII of the report entitled "effect of impairment of function", Dr. Handley again reports only that "[plaintiff] *said*" and "[plaintiff] *stated*" when discussing how her impairment affects her activities of daily living, social functioning and concentration, persistence and pace." (R. 298). Accordingly, contrary to plaintiff's suggestion that there is "no evidence" that Dr. Handley heavily relied on plaintiff's own subjective complaints, in fact there is little evidence in the report that Dr. Handley relied on anything *but* plaintiff's own reported symptoms.

Plaintiff's contention that the ALJ "never explained" his "allegation" of inconsistent medical evidence is belied by the record. First, as the ALJ noted, the extreme limitations set forth in Dr. Handley's medical source statement are not supported by Dr. Handley's own mental status report. Although Dr. Handley noted in the report that plaintiff was "tearful" during the exam and that she has a short-term memory problem, he also reported that she was appropriate in her affect and behavior, that she was able to generate thoughts, feelings and ideas, that she did not digress and did not have to be re-directed and that she was oriented to

AO 72
(Rev. 8/82)

- 6 -

person, place and time. (R. 295-96). These sorts of observations do not support the "extreme" limitations noted by Dr. Handley in her medical source statement.

Moreover, the ALJ also explicitly addressed the differing opinion of Dr. Jan Melcher, Ph.D., the state agency examiner. (R. 16-17). Pursuant to the Regulations, state agency medical consultants are "highly qualified physicians ... who are also experts in Social Security disability evaluation." 20 C.F.R. §§404.1527(f)(2)(i) and 416.927(f)(2)(i). Accordingly, while not bound by findings made by reviewing physicians, the ALJ is to consider those findings as opinion evidence, and is to evaluate them under the same standards as all other medical opinion evidence. 20 C.F.R. §§404.1527(f)(2)(ii) and 416.927(f)(2)(ii); SSR 96-6p. The ALJ did so here and, having concluded that Dr. Melcher's report was more consistent with the totality of the evidence than Dr. Handley's, he properly gave Dr. Melcher's opinion "great weight." (R. 17).

Plaintiff's allegation that the ALJ "failed to mention or refute" the opinion of plaintiff's primary care physician, Dr. Humphrey, which she contends supported Dr. Handley's, also is belied by the record. In the first instance, Dr. Humphrey's report was a medical source statement relating to plaintiff's *physical* impairments, not her mental impairments. Moreover, the ALJ expressly rejected Dr. Humphrey's opinion that plaintiff would miss 15 or more days per month as "unsupported," noting that "there are virtually no treatment records from Dr. Humphrey to support his medical source statement." (R. 16).

Plaintiff's remaining challenges to the ALJ's evaluation of Dr. Handley's medical source statement also are without merit. Although plaintiff asserts that it was "inappropriate" for the ALJ to consider plaintiff's lack of mental health treatment, the Regulations provide that frequency of treatment in fact may appropriately be considered in evaluating a plaintiff's

AO 72
(Rev. 8/82)

credibility under the regulations. §§404.1529(c)(3) and 416.929(c)(3) and SSR 96-7p ("[claimant's] statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints."). As Dr. Handley's opinion relied on plaintiff's subjective complaints, the ALJ committed no error in considering plaintiff's lack of treatment in evaluating it. Furthermore, the ALJ's statement that plaintiff was "only prescribed Paxil" is not, as plaintiff contends, a "lay opinion" but rather is a statement of fact, as there is no evidence in the record that plaintiff was taking anything other than Paxil for treatment of her mental impairments.

Finally, plaintiff's allegation that the ALJ "never addressed" additional "extreme" limitations set forth in Dr. Handley's medical source statement, specifically relating to plaintiff's ability to respond appropriately to supervisors, co-workers and work pressures in a work setting, is erroneous, as the ALJ's decision explicitly refers to Dr. Handley's assessment of "extreme" limitations in those areas immediately before he explained why he was rejecting the medical source statement *in toto*. (R. 17-18).

Based upon his review of the <u>entire</u> record, the ALJ concluded that plaintiff's impairments, while severe, do not result in the debilitating limitations set forth by Dr. Handley in her medical source statement.[4] Because that opinion was not supported by the objective medical evidence and was inconsistent with other substantial evidence in the record, the ALJ did not err in rejecting it. 20 C.F.R. §§404.1527(d) and 416.927(d); SSR 96-2p. The ALJ did a thorough job in his decision in setting forth the relevant medical evidence and explaining why

---

[4] To the extent plaintiff's limitations were supported by the record, the ALJ did accommodate them in his residual functional capacity finding by limiting plaintiff to simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes; she is limited to occupations not involving high levels of stress, i.e., requiring independent decision making or occupations subject to close supervision or close interaction with co-workers or the general public. (R. 13,17).

he rejected or discounted any evidence. The court is satisfied that the ALJ's evaluation of the medical evidence is supported by substantial evidence.

Plaintiff's other challenge to the ALJ's decision is that, despite giving "great weight" to the opinion of Dr. Melcher, the state agency medical consultant, the ALJ failed to incorporate into his residual functional capacity finding and resultant hypothetical to the vocational expert all of the limitations set forth in Dr. Melcher's opinion. Specifically, plaintiff alleges that the ALJ's residual functional capacity finding and hypothetical failed to account for plaintiff's "moderate" limitations in social functioning and concentration, persistence and pace.

Upon review, the court finds that the ALJ's residual functional capacity finding and resultant hypothetical to the vocational expert adequately accommodate plaintiff's moderate limitations in the aforementioned areas of functioning. It is clear from the record that the ALJ adequately considered Dr. Melcher's opinion in assessing plaintiff's residual functional capacity, and that he incorporated into his finding all of the limitations that reasonably could be supported by the medical and non-medical evidence. (R. 13-18). The court believes that the ALJ's restriction of plaintiff "to simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes; she is limited to occupations not involving high levels of stress, i.e., requiring independent decision making or occupations subject to close supervision or close interaction with co-workers or the general public" adequately addresses Dr. Melcher's finding of moderate limitations in social functioning and concentration, persistence and pace. See, e.g., Parks v. Commissioner of Social Security, 401 Fed.Appx. 651, 655-56 (3d. Cir. 2010)( hypothetical limiting claimant to performing simple, unskilled work with restricted social interactions adequate to account for moderate limitations in social functioning and

concentration, persistence and pace); McDonald v. Astrue, 293 Fed.Appx. 941, 946-47 (3d Cir. 2008)(hypothetical limiting claimant to "simple, routine tasks" adequate to accommodate "moderate" limitations in concentration, persistence and pace); Menkes v. Astrue, 262 Fed.Appx. 410, 412-13 (3d Cir. 2008)(no error in hypothetical restricting claimant to "simple routine tasks" to account for moderate limitations in concentration, persistence and pace).

In sum, the court is satisfied that the ALJ's residual functional capacity finding is supported by substantial evidence as outlined in the decision and that the ALJ's hypothetical to the vocational expert incorporating that residual functional capacity finding adequately accounted for all of plaintiff's limitations that are supported by the objective evidence. Podedworny v. Harris, 745 F.2d 210 (3d Cir. 1984)(RFC and hypothetical to the vocational expert must reflect only those impairments and limitations supported by the record). Accordingly, the vocational expert's response to that hypothetical indicating that, despite those restrictions plaintiff retains the ability to perform the identified light jobs, constitutes substantial evidence supporting the ALJ's finding that plaintiff is not disabled within the meaning of the Act.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

*Gustave Diamond*
Gustave Diamond
United States District Judge

cc: Lindsay Fulton Osterhout, Esq.
521 Cedar Way
Suite 200
Oakmont, PA 15139

Christy Wiegand
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219